UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>            Plaintiff,<br>v.<br><br>JOHN DOE, subscriber assigned IP address 67.86.53.252,<br><br>            Defendant. | Civil Action No.<br>3: 18 - CV - 1510 (CSH)<br><br><br>NOVEMBER 2, 2018 |

**RULING ON PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE [Doc. 7]**

**HAIGHT, Senior District Judge:**

### I. INTRODUCTION

In this copyright infringement action, Plaintiff Malibu Media LLC, d/b/a "X-Art.com" ("Plaintiff" or "Malibu Media") asserts that defendant John Doe, identified only by his Internet Protocol ("IP") address, has unlawfully distributed six of Plaintiff's copyrighted adult films between May 23, 2018, and August 4, 2018, by using BitTorrent, a "peer-to-peer file sharing system[ ] used for distributing large amounts of data, including, but not limited to, digital movie files."[1] Doc. 1, ¶¶ 9, 11, 21-24, Ex. A. Pursuant to Rule 26(d)(1), Fed. R. Civ. P., Plaintiff has moved for leave to serve a third-party subpoena on Defendant's internet service provider ("ISP"), Optimum Online, for

---

[1] As Plaintiff explains in its Complaint, "[i]n order to distribute a large file, the BitTorrent protocol breaks a file into many small pieces" and "[u]sers then exchange these small pieces among each other instead of attempting to distribute a much larger digital file." Doc. 1, ¶ 13. "After the infringer receives all of the pieces of a digital media file, the infringer's BitTorrent client software reassembles the pieces so that the file may be opened and utilized." *Id.*, ¶ 14.

1

the limited purpose of discovering Defendant's identity so that Plaintiff may serve Defendant with process and proceed in litigating this case. Doc. 7, at 1. For the reasons Plaintiff has presented in its motion and supporting papers, and the discussion detailed below, the Court will grant the motion for good cause, as limited by the conditions delineated herein.

## II. DISCUSSION

In general, parties "may not initiate discovery prior to satisfying the meet and confer requirement of Fed. R. Civ. P. 26(f)." *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012). Specifically, under Rule 26(d)(1), Fed. R. Civ. P., "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," except in limited proceedings delineated in Rule 26(a)(1)(B), or "when authorized by these rules, by stipulation, or by court order." "[C]ourts may in some instances order earlier discovery." *Digital Sin*, 279 F.R.D. at 241 (citing Fed. R. Civ. P. 26(d)). *See, e.g.*, *Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 173.68.5.86*, No. 1:16-CV-02462 (AJN), 2016 WL 2894919, at *2 (S.D.N.Y. May 16, 2016) ("[A] party may engage in discovery before such a [26(f)] conference pursuant to a court order.") (citing Fed. R. Civ. P. 26(d)(1)).

When considering whether to grant a motion for expedited discovery prior to a Rule 26(f) conference, courts apply a "flexible standard of reasonableness and good cause." *Malibu Media, LLC*, 2016 WL 2894919, at *2 (gathering cases). *See also Arista Records LLC v. Does 1-4*, 589 F. Supp. 2d 151, 152-53 (D. Conn. 2008) (applying "good cause" standard to request for expedited discovery) (citation omitted). *See generally* 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2046.1 (3d ed. 2011) ("Although [Rule 26(d)] does not say so, it is implicit that some showing of good cause should be made to justify such an order, and courts

presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by a good cause standard.").

In the Second Circuit, in evaluating subpoenas seeking identifying information from ISPs regarding subscribers who are parties to copyright infringement litigation, courts have examined the following factors:

> (1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, . . . (2) [the] specificity of the discovery request, . . . (3) the absence of alternative means to obtain the subpoenaed information, . . . (4) [the] need for the subpoenaed information to advance the claim, . . . and (5) the [objecting] party's expectation of privacy.

*Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (quoting *Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004)). If "[a]pplication of these 'principal factors' confirms that the Plaintiff is entitled" to the requested subpoena, the motion for early discovery will be granted for "good cause." *Malibu Media, LLC*, 2016 WL 2894919, at *2.

Examining the principal factors in detail, the plaintiff must first state a prima facie claim for copyright infringement. *See, e.g., Sony Music Entm't Inc.*, 326 F. Supp. 2d at 565. Specifically, the plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). *See also Urbont v. Sony Music Entm't*, 831 F.3d 80, 88 (2d Cir. 2016); *Arista Records, LLC,* 604 F.3d at 117.

The owner of a copyright has exclusive rights to reproduce that copyrighted work and to distribute copies to the public by sale, transfer of ownership, rent, lease, or lending. 17 U.S.C. § 106. Moreover, a plaintiff is entitled to seek statutory damages and attorney's fees under the United States Copyright Act if its copyrighted work was registered within three months of the first

date of publication. 17 U.S.C. §§ 411 (c)(2), 501.

A plaintiff makes "a concrete, prima facie case of copyright infringement by alleging ownership of the registered copyright and alleging unlawful downloading, copying, and distribution of this work by specifying the type of technology used, the IP address from which the file was accessed and shared, and the date and time of the infringement." *STRIKE 3 HOLDINGS, LLC, Plaintiff, v. JOHN DOE, subscriber assigned IP address 47.18.94.18, Defendant,* No. 3: 18-CV-1332 (CSH), 2018 WL 4846676, at *2 (D. Conn. Oct. 5, 2018) (quoting *Malibu Media, LLC v. Doe*, No. 14-CV-4808 (JS)(SIL), 2016 WL 4574677, at *6 (E.D.N.Y. Sept. 1, 2016)). *See also Sony Music Entm't Inc.*, 326 F. Supp. 2d at 565-66 ("[T]he use of P2P [peer-to-peer] systems to download and distribute copyrighted music has been held to constitute copyright infringement.") (collecting cases); *Patrick Collins, Inc. v. John Doe 1*, 945 F. Supp. 2d 367, 375 (E.D.N.Y. 2013) ("Indeed, every court to have addressed this issue has found a sufficiently alleged copyright infringement claim based on BitTorrent technology, even when the defendant was merely identified with an IP address.").

Malibu Media has alleged that it is the owner of the adult films at issue. *See* Doc. 1, ¶ 30; Doc. 1-1 (list of six "Copyrights-In-Suit for IP Address 67.86.53.252"). In addition, Malibu Media has made a plausible showing that wrongful "copying" of that work has occurred by alleging that its investigator, IPP International UG ("IPP"), has established a direct TCP/IP connection with the Defendant's IP address, as set forth in Plaintiff's Exhibit A to its Complaint.[2]  Doc. 1, ¶ 18. In

---

[2] "TCP" refers to "Transmission Control Protocol," which is one of the main protocols in a TCP/IP network. Although an IP protocol deals with packets of information, a TCP enables two hosts to establish a connection and exchange streams of data. *See generally* https://www.webopedia.com/TERM/T/TCP.html (accessed 10/30/2018). With TCP, two hosts maintain a connection until the application programs have finished exchanging messages.

particular, Plaintiff has alleged that its investigator, IPP, has established that Defendant's IP address was used to unlawfully download six of Plaintiff's copyrighted movies from the BitTorrent file distribution network. *Id.*, ¶¶ 18-26; *see also* Doc. 1-1 and 1-2 (Ex. A & B, respectively).[3] Under these circumstances, Plaintiff has stated a prima facie case for actionable harm due to copyright infringement.

Second, in order to show "good cause" for early discovery, the plaintiff must narrowly tailor and specify the information sought by the discovery request. The information requested in the subpoena must be limited, seeking "concrete and narrow information: the name and address of the subscriber associated with Doe [Defendant's] IP address . . . . " *John Wiley & Sons, Inc. v. Doe Nos. 1-30,* 284 F.R.D. 185, 190 (S.D.N.Y. 2012). Courts have labeled the subscriber's identity and address as "highly specific," *Malibu Media*, 2016 WL 4574677, at *6, recognizing that "Plaintiffs clearly need identification of the putative John Does in order to serve process on them and prosecute their claims," *UN4 Prods., Inc. v. Doe-173.68.177.95*, No. 17-CV-3278 (PKC) (SMG), 2017 WL 2589328, at *3 (E.D.N.Y. June 14, 2017) (citation and internal quotation marks omitted). *See also Sony Music Entm't Inc.*, 326 F. Supp. 2d at 566 ("Ascertaining the identities and residences of the Doe defendants is critical to plaintiffs' ability to pursue litigation, for without this information, plaintiffs will be unable to serve process."); *Malibu Media, LLC v. John Does 1-11*, No. 12 Civ.

---

[3] In paragraph 21 of its Complaint [Doc. 1], Malibu Media states:

> A full copy of each digital media file was downloaded from the BitTorrent file distribution network, and it was confirmed through independent calculation that the file hash correlating to each file matched what is listed on Exhibit A. At no point was Plaintiff's copyrighted content uploaded to any other BitTorrent user.

Plaintiff subsequently concluded, "Defendant downloaded, copied, and distributed a complete copy of Plaintiff's works without authorization as enumerated on Exhibits A and B." Doc. 1, ¶ 24.

3810 (ER), 2013 WL 3732839, at *5 n.1 (S.D.N.Y. 2013) ("Discovery requests must be 'sufficiently specific to establish a reasonable likelihood that the discovery request would lead to identifying information that would make possible service upon particular defendants who could be sued in federal court.'") (quoting *Sony Music Entm't Inc.*, 326 F. Supp. 2d at 566).

In the case at bar, Plaintiff requests to serve a subpoena to obtain "the true name and address of the Defendant to whom the ISP assigned an IP address as set forth on Exhibit A in the Complaint." Doc.7-5, ¶ 2. Because the requested subpoena is sufficiently specific, the second principal factor weighs in favor of the Court granting Plaintiff's motion for leave to serve the subpoena.

Third, there must be no "alternative means to obtain the subpoenaed information.*" Arista Records*, 604 F.3d at 119 (quoting *Sony Music Entm't Inc*., 326 F. Supp. 2d at 564-65). In the case at bar, Plaintiff "knows Defendant only by his or her IP address." Doc. 7-1, at 15. Plaintiff asserts that "[t]he government, law enforcement officials, criminal and civil judges, and ISPs alike all acknowledge that subpoenaing an ISP is the only way to identify an internet subscriber." *Id.* That is because "[t]here are no publicly-available databases or 'yellow pages' that can identify an individual by an IP address." *Id.* Moreover, ISP records "are the *only available evidence* that allows [one] to investigate who committed crimes on the Internet." *Id.* (emphasis in original)(quoting Jason Weinstein, Deputy Assistant Attorney General, Criminal Division, "Statement Before the Committee re Judiciary Subcommittee on Crime, Terrorism, and Homeland Security," United States House of Representatives (January 25, 2011)). Therefore, "issuing a subpoena to the responsible ISP is the only way to identify the subscriber of an IP address." *Id.*, at 16 (citing *United States v. Chamberlin*, No. 09-CR-6169 (CJS), 2010 WL 1904500, *2 (W.D.N.Y. May 12, 2010) (subpoenaing an ISP to

identify IP address subscriber) (collecting cases). In sum, Plaintiff has established that it lacks alternative means to obtain the subpoenaed information, namely, Defendant's identity and address.

Fourth, the plaintiff must show that the subpoenaed information is necessary to advance the claim at issue. As stated *supra*, Malibu Media cannot learn the subscriber's identity without the subpoenaed information and consequently cannot serve process on Defendant. *See, e.g., Sony Music Entm't Inc.*, 326 F. Supp. 2d at 566. *See also Arista Records LLC*, 589 F. Supp. 2d at 153 ("Because learning the true identities of the pseudonymous individuals alleged to have violated Plaintiffs' copyrights is essential to their prosecution of this litigation, Plaintiffs have demonstrated their need for expedited discovery."). As one district court concluded in this Circuit, "[w]ithout learning the Defendant's identity and address, the Plaintiff will be unable to serve process and pursue its claim." *Malibu Media, LLC v. Doe*, No. 15-CV-3504 (JFB) (SIL), 2016 WL 4444799, at *11 (E.D.N.Y. Aug. 23, 2016) (quoting *Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 24.90.139.137,* No. 15-CV-7788 (KMW), 2016 WL 1651869, at *3 (S.D.N.Y. Apr. 26, 2016)).

Finally, with respect to the fifth prong, the Court weighs the Plaintiff's interest in obtaining the information against that of Defendant's right to privacy. To balance these interests, the Court assesses whether Defendant has an expectation of privacy in his of her IP address while infringing copyrighted material.

The Second Circuit has stated that "[t]he Supreme Court has long held that a 'person has no legitimate expectation of privacy in information he voluntarily turns over to third parties,' including phone numbers dialed in making a telephone call and captured by a pen register." *United States v. Ulbricht*, 858 F.3d 71, 96 (2d Cir. 2017) (quoting *Smith v. Maryland*, 442 U.S. 735 (1979)). "The recording of IP address information and similar routing data, which reveal the existence of

connections between communications devices without disclosing the content of the communications, are precisely analogous to the capture of telephone numbers at issue in *Smith*." *Ulbricht*, 858 F.3d at 97. The Second Circuit then "join[ed] the other circuits . . . [to] hold that collecting IP address information devoid of content is 'constitutionally indistinguishable from the use of a pen register.'" *Id.* (quoting *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008), *cert. denied*, 555 U.S. 908 (2008)). Specifically, there is no expectation of privacy in "subscriber information provided to an internet provider," such as an IP address.[4] *Id.* (quoting *United States v. Christie*, 624 F.3d 558, 573 (3d Cir. 2010)). Such information has been "voluntarily conveyed to third parties." *Christie*, 624 F.3d at 573.[5] *See also Malibu Media, LLC v. John Does 1-14*, No. 1:12-cv-263, 2012 WL 6019259,

---

[4] In copyright infringement cases, defendants have argued unsuccessfully that the revelation of their subscriber information, *i.e.*, their IP address, violates their right to privacy under the First Amendment or the Fourth Amendment. For example, they have argued that the First Amendment protects anonymous speech, citing such cases as *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 200 (1999). *See Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 562 (S.D.N.Y. 2004); U.S. Const. amend. I (protecting one's anonymous speech). In other cases, they have asserted that the Fourth Amendment protects their personal information in their IP address from unreasonable seizure. *See United States v. Ulbricht*, 858 F.3d 71, 96 (2d Cir. 2017); U.S. Const. amend. IV (protecting "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures"). These privacy arguments have failed. The First Amendment does not protect copyright infringement. *See, e.g., Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 555-56 (1985). "Parties may not use the First Amendment to encroach upon the intellectual property rights of others." *Sony Music Entm't Inc.*, 326 F. Supp. 2d at 563 (citing *In re Capital Cities/ABC, Inc.*, 918 F.2d 140, 143 (11th Cir.1990)). Moreover, the Fourth Amendment does not protect infringers who have voluntarily provided "their IP addresses to Internet service providers for the specific purpose of directing the routing of information." *Ulbricht*, 858 F.3d at 96 (citing *Christie*, 624 F.3d at 574).

[5] *See also, e.g., Raw Films, Ltd. v. John Does 1-15*, No. CIV.A. 11-7248, 2012 WL 1019067, at *8 (E.D. Pa. Mar. 26, 2012) (The "expectation of internet users engaging in online file-sharing . . . is at most minimal because those individuals have already voluntarily given up certain information by engaging in that behavior."); *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 451 (C.D. Cal. 2007) ("To the extent the [internet] users are engaged in copyright infringement, the First Amendment affords them no protection whatsoever.") (citing *Harper & Row Publishers, Inc. v. Nation Enters*, 471 U.S. 539, 559 (1985)).

at * 4 (N.D. Ind. Dec. 3, 2012) ("[T]here is no expectation of privacy in internet subscriber information because [that information] has already been exposed to a third party, the Internet Service Provider.") (citation and internal quotation marks omitted); *United States v. Wellbeloved-Stone*, No. 3:17-CR-00014, 2018 WL 1973286, at *5 (W.D. Va. Apr. 26, 2018) ("Courts have consistently found there is no expectation of privacy in a subscriber's personal information provided to his internet service provider, phone company, or voluntarily to a third party. In fact, '[e]very federal court to address this issue has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation.'") (quoting *United States v. Perrine*, 518 F.3d 1196, 1204 (10th Cir. 2008)) (collecting cases)).

In cases where parties have argued that the First Amendment protected their anonymous speech in using their IP addresses, the Second Circuit has held that copyright infringers are not entitled to shield their identities from those who seek to enforce their claims under copyright law. *See, e.g., Arista Records, LLC*, 604 F.3d at 124 (holding defendant's "expectation of privacy for sharing copyrighted [works] through an online file-sharing network [was] simply insufficient to permit him to avoid having to defend against a claim of copyright infringement"). The district courts within this Circuit have thus allowed copyright plaintiffs to obtain infringers' ISP addresses. For example, in *Sony Music Entm't Inc. v. Does 1-40,* the court held that "defendants have little expectation of privacy in downloading and distributing copyrighted songs without permission." 326 F. Supp. 2d at 566. Accordingly, the copyright plaintiffs were "entitled to discovery in light of [the] defendants' minimal expectation of privacy" in transmitting information on the internet in violation of applicable law. *Id. See also, e.g., Rotten Records, Inc. v. Doe*, 108 F. Supp. 3d 132, 134 (W.D.N.Y. 2015) ("Plaintiff's interest in learning Defendant's name and address outweighs

Defendant's privacy interest.") (citing *Arista Records, LLC*, 604 F.3d at 124).

Pursuant to the weight of relevant case authority, and particularly Second Circuit precedent, the Court finds that the Doe Defendant's First Amendment right to remain anonymous must yield to Plaintiff's right to use the judicial process to pursue its allegedly meritorious copyright infringement claim. Moreover, the Doe Defendant lacks the right under the Fourth Amendment to protect his IP address from revelation where he has voluntarily shared such information with the ISP, Optimum Online. Plaintiff's motion will be granted, permitting early discovery to determine the identity of Defendant Doe.[6]

In granting early discovery by subpoena, the Court recognizes that in certain BitTorrent cases involving adult content, other courts have protected the defendants' privacy with an order establishing procedural safeguards. For example, some courts have allowed the defendant to proceed anonymously in the case. *See e.g. Malibu Media, LLC*, 2016 WL 4444799, at *2 ("[T]he Court issued a Protective Order governing the manner in which such information would be disclosed."). As set forth *infra*, in ruling on Plaintiff's motion, the Court will establish procedures to protect the Doe Defendant's privacy here.

---

[6] The Court notes that Defendant has made a prima facie showing that personal jurisdiction over Defendant Doe is proper within this District. Plaintiff represents that it "used proven IP address geolocation technology . . . to ensure that the Defendant's acts of copyright infringement occurred using an Internet Protocol address ('IP address') traced to a physical address located within this District." Doc. 1, ¶ 5; Doc. 7-1, at 20. In particular, "Plaintiff used Maxmind® Premium's IP geolocation database to determine that Defendant properly resided in a location both within the state of Connecticut and this district." Doc. 7-1, at 20. Such IP locators "have been accepted as making out a prima facie case of personal jurisdiction," *Digital Sins, Inc. V. John Does 1-245,* No. 11 Civ. 8170, , 22012 WL 1744838, at *4 (S.D.N.Y. May 15, 2012).

## III. CONCLUSION

### A. General Provisions

For the foregoing reasons, the Court hereby GRANTS the Plaintiff's "Motion for Leave to Serve A Third Party Subpoena Prior to A Rule 26(f) Conference" [Doc. 7] and ORDERS, as follows:

1. Under relevant Second Circuit authority, Plaintiff Malibu Media has established that "good cause" exists for the Court to grant Plaintiff leave to serve a third party subpoena on the ISP, Optimum Online, for the purpose of determining the identity of the alleged infringer, Defendant Doe. *See, e.g., Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010); *Sony Music Entm't v. Does 1-40*, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004); *Arista Records LLC v. Does 1-4,* 589 F. Supp. 2d 151, 153 (D. Conn. 2008); *Malibu Media, LLC v. Doe,* No. 3: 18-CV-590 (CSH), 2018 WL 2045998, at *3 (D. Conn. May 2, 2018)*; Malibu Media, LLC v. John Does 1-11*, No. 12 Civ. 3810 (ER), 2013 WL 3732839, at *6 (S.D.N.Y. 2013); *John Wiley & Sons, Inc. v. Doe Nos. 1-30*, 284 F.R.D. 185, 189 (S.D.N.Y. 2012).

2. Plaintiff may serve the ISP with a Rule 45 subpoena commanding the ISP to provide Plaintiff with the true name and address of the Defendant to whom the ISP assigned the indicated IP address (67.86.53.252) as set forth in Exhibit A to the Complaint. Plaintiff shall attach to any such subpoena a copy of this Ruling.

3. Plaintiff may also serve a Rule 45 subpoena in the same manner as described in the preceding paragraph on any service provider who, in response to a subpoena, is identified as a provider of Internet services to the Defendant.

4. If the ISP or another service provider (as described in ¶ 3, *supra*) qualifies as a "cable

operator," as defined by 47 U.S.C. § 522(5), it shall comply with 47 U.S.C. § 551(c)(2)(B) by sending a copy of this Ruling to the Defendant.[7] Section 551(c)(2)(B) states in relevant part:

> A cable operator may disclose such [personally identifying] information if the disclosure is . . . made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed.

5. Plaintiff may only use the information disclosed in response to a Rule 45 subpoena served on the ISP for the purpose of protecting and enforcing Plaintiff's rights, as set forth in its Complaint [Doc. 1].

**B. Additional Conditions and Limitations**

In addition, the Court will address the concerns, acknowledged by Plaintiff and raised by numerous federal courts, that defendants feel compelled to settle such copyright infringement actions to prevent disclosure of their identities due to the nature of the adult films they have allegedly distributed.[8] *See, e.g., Malibu Media, LLC v. John Does 1–5*, 285 F.R.D. 273, 278 (S.D.N.Y.2012) ("[T]here is a fear that regardless of a defendant's actual culpability, [the Defendant] may feel

---

[7] 47 U.S.C. § 522(5) defines the term "cable operator" as "any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system."

[8] Due to such concerns, Plaintiff represents that it "has instructed its counsel to always consent to allowing defendants to proceed anonymously through discovery." Doc. 7-1, at 4. Moreover, "Plaintiff does not extend settlement offers prior to serving a defendant with the complaint" and "has only settled prior to serving when the defendant initiated the request." *Id.*, at 5. Plaintiff thus willingly accepts language in the Court's ruling that would prevent it "from initiating settlements with Defendant [Doe] and allowing [him or her] to proceed anonymously." *Id.* These conditions are endorsed by the Court in this Ruling at paragraphs 1 and 8, respectively, of the "Additional Conditions and Limitations."

compelled to settle the lawsuit confidentially in order to avoid the embarrassment of being named as a defendant in a case about the alleged illegal trading of a pornographic film.") (internal quotation marks omitted)); *Malibu Media, LLC v. Doe*, No. 15 CIV. 4381 (JFK), 2015 WL 4923114, at *1 (S.D.N.Y. Aug. 18, 2015) ("[C]ourts in this district have expressed concern . . . that disclosure of a defendant's name or other identifying information in cases involving infringement of adult films could lead to abusive litigation through coercion."); *Malibu Media, LLC v. Doe*, No. 15 CIV. 4369 (AKH), 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015) (In discussing the increasing "danger of copyright trolls," the Court noted that "the late Judge Harold Baer, Jr. explained that '[i]n such cases, there is a risk not only of public embarrassment for the misidentified defendant, but also that the innocent defendant may be coerced into an unjust settlement with the plaintiff to prevent the dissemination of publicity surrounding unfounded allegations.'") (quoting *Media Prod., Inc. v. Does 1-26*, No. 12 CIV. 3719, 2012 WL 2190613, at *1 (S.D.N.Y. June 12, 2012)).

In light of such concerns, the Court imposes the following conditions and limitations:

1. Plaintiff may subpoena Defendant's ISP *only to obtain Defendant's name and address*, but not Defendant's e-mail addresses or telephone numbers. As set forth above, Plaintiff may only use this information (name and address) for the purposes of this litigation. Plaintiff is ordered not to disclose Defendant's name or address, or any other identifying information other than Defendant's IP address, that Plaintiff may subsequently learn. Plaintiff shall not threaten to disclose any of Defendant's identifying information. Defendant will be permitted to litigate this case anonymously unless and until this Court orders otherwise and only after Defendant has had an opportunity to challenge the disclosure. Therefore, Plaintiff is ordered not

to publicly file any of Defendant's identifying information and to file all documents containing Defendant's identifying information under seal.

2. As to timing, Plaintiff may immediately serve a Rule 45 subpoena on Defendant's ISP to obtain Defendant's name and current and permanent address. Plaintiff is reminded that it must serve Defendant with a copy of the Complaint, this Ruling, and the subpoena.

3. After having been served with the subpoena, the ISP will delay producing to Plaintiff the subpoenaed information until after it has provided Defendant John Doe with:

   a. notice that this suit has been filed naming Defendant as the one who allegedly downloaded copyright protected work;

   b. a copy of the subpoena, the Complaint filed in this lawsuit, and this Ruling; and

   c. notice that the ISP will comply with the subpoena and produce to Plaintiff the information sought in the subpoena unless, within sixty (60) days of service of the subpoena on Defendant by the ISP, Defendant files a motion to quash the subpoena or for other appropriate relief in this Court. If a timely motion to quash is filed, the ISP shall not produce the subpoenaed information until the Court acts on the motion.

4. Defendant's ISP will have 60 days from the date of service of the Rule 45 subpoena upon it to serve Defendant John Doe with a copy of the Complaint, this Ruling, and the subpoena. The ISP may serve Defendant John Doe using any reasonable means, including written notice sent to his or her last known address, transmitted either by

first class mail or via overnight service.

5. Defendant John Doe shall thereafter have sixty (60) days from the date of service of the Rule 45 subpoena and this Ruling upon him to file any motions with this Court to contest the subpoena (including a motion to quash or modify the subpoena), as well as to request to litigate the subpoena anonymously. During this sixty (60)-day period, if Defendant contests the subpoena, it shall notify the ISP, which shall then not turn over the Defendant's identifying information to Plaintiff. Upon expiration of the sixty (60) days, if Defendant has filed a motion to quash or modify the subpoena, or a request to litigate the subpoena anonymously, the ISP may not turn over any information to Plaintiff unless and until the Court resolves the issue(s) and instructs the ISP when it may, if ever, turn the requested discovery over to the Plaintiff. In the mean time, the ISP must preserve all subpoenaed information pending the resolution of any timely filed motion to quash.

6. Alternatively, if the sixty (60)-day period referenced in the preceding paragraph elapses without Defendant or the ISP contesting the subpoena, the ISP shall have fourteen (14) days thereafter to produce the information which is responsive to the subpoena to the Plaintiff.

7. Defendant's ISP shall confer with Plaintiff and shall not assess any charge in advance of providing the information requested in the subpoena. If Defendant's ISP receives a subpoena and elects to charge for the costs of production, it shall provide a billing summary and cost report to Plaintiff.

8. Plaintiff may not solicit settlement of this case prior to service of the Complaint upon

the Defendant. Doc. 7-1, at 4-5. As described in footnote 8, *supra*, Plaintiff has consented to this condition with the understanding that defendants in such infringement cases may feel coerced to settle to avoid a risk of public embarrassment.

The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
November 2, 2018

                                             /s/Charles S. Haight, Jr.
                                             CHARLES S. HAIGHT, JR.
                                             Senior United States District Judge